**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

CEDRIC REID,

                              Plaintiff,

        v.                                                      No. 9:10-CV-609
                                                                    (NAM/DRH)

NORMAN R. BEZIO; J. WOLCZYK; H.D.
GRAHAM; DAVID STALLONE; T. QUINN;
HEAD; M. CHINDAMO; ROBERT DAVIA;
DENISE B. SARRA; T.J. GAMBA; M.
MOGAVERO; JUSTIN A. TAYLOR; P.
LECONEY; R. PIRIE; A. TAYLOR; M.
LEONE; DEMARCO; A. JACOT; R. STILES;
H. HOOPER; R. GEDDIS; S. BATEMAN;
M. LEONARD; and N. RYERSON,

                              Defendants.

_____

**APPEARANCES:**                              **OF COUNSEL:**

CEDRIC REID
Plaintiff Pro Se
00-A-6988
Elmira Correctional Facility
Post Office Box 500
Elmira, New York 14902-0500

HON. ERIC T. SCHNEIDERMAN            CHRISTOPHER W. HALL, ESQ.
Attorney General of the                          Asst. Attorney General
  State of New York
Attorney for the Defendants
Department of Law
The Capitol
Albany, New York 12224

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

Plaintiff pro se Cedric Reid ("Reid"), an inmate in the custody of the New York State

Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C.

§ 1983 alleging that defendants, twenty-nine DOCS employees at three facilities in the

Western and Northern Districts of New York, violated his constitutional rights under the

First, Eighth, and Fourteenth Amendments.  Compl. (Dkt. No. 1).  Reid commenced this

action on December 1, 2008, in the Western District.  In an order in that district, the claims

involving the twenty-four above-named defendants were severed, the claims against the

defendants located in the Western District were dismissed, and the claims against those

defendants located in this district were transferred here.  Dkt. No. 31; Reid v. Nuttall, No.

08-CV-870A, 2010 WL 2025458 (W.D.N.Y. May 20, 2010).  Presently pending is

defendants' motion to dismiss as to the Northern District claims and defendants pursuant to

Fed. R. Civ. P. 12(b)(6).  Dkt. No. 49.[2]  Reid opposes the motion.  Dkt. No. 54.  For the

following reasons, it is recommended that defendants' motion be granted in part and denied

in part.

_____

[1] This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[2] The May 20, 2010 order in the Western District denied as moot defendants' motion
to dismiss in that district as to the defendants transferred to the Northern District. Dkt. No.
31 at 2-3.  Decision on the motion as to the Northern District defendants was deferred to
this district.  Id.; see also Report, Recommendation & Order (Dkt. No. 25) at 2-3
(recommending that the district court defer decision on Northern District defendants to this
district).  The defendants transferred to this district then filed the present motion.

## I. Background

The following facts, taken from the complaint, are accepted as true for purposes of this motion to dismiss.  See subsection II(A) infra.  In his complaint, Reid asserts various conditions-of-confinement claims as well as claims for conspiracy and retaliation related to seven disciplinary reports.  However, the May 20, 2010, order severed and transferred only those claims arising from conduct that occurred at Auburn Correctional Facility ("Auburn") and Gouverneur Correctional Facility ("Gouverneur") in the Northern District.  Moreover, in his Memorandum of Law in Opposition to Defendants' Motion to Dismiss, Reid abandoned the retaliation claims related to the second and fifth disciplinary reports as well as all of the remaining conditions-of-confinement claims.  Dkt. No. 54 at 2, 15–16.  Reid also withdrew his claims against defendants Leconey, Bateman, and Stiles.  Id. at 14.  Therefore, the only remaining claims are those for retaliation and conspiracy relating to the third, fourth, sixth, and seventh disciplinary reports.  Accordingly, defendants Leconey, Bateman, Stiles, Davia,[3] Head, Demarco, Jacot, Stallone, Ryerson, Gamba, Mogavero, and Justin Taylor should be dismissed as they are not implicated in the remaining claims.

### A. Third Disciplinary Report

On January 16, 2007, Reid sent a letter to defendant Sarra, Education Supervisor at Auburn, complaining about a teacher.  Compl. ¶ 3.  Sarra responded the same day, advising Reid that it was not his responsibility to critique the teacher.  Id. ¶ 3(a).  The next day, Sarra confronted Reid in person and stated:  "I received two written complaints from

---

[3]Additionally, Davia has not been served with process or otherwise appeared in the action.  A summons for service on Davia was re-issued on March 3, 2011.  Dkt. No. 59.

you, I don't want anymore." Id. ¶ 3(c).  On January 18, 2007, Reid was served with a

disciplinary report, authored by Sarra, charging him with disobeying a direct order and

interfering with staff.  Id. ¶ 3(d).  The same day, Reid filed a grievance concerning the

confrontation with Sarra.  Id. ¶ 3(k).  Sarra and defendant Chindamo, a corrections officer at

Auburn, were present at the subsequent disciplinary hearing at which Reid was found guilty

and sentenced to thirty days in keeplock.[4]  Id. ¶¶ 3(g)–(h).  Defendant Graham,

Superintendent of Auburn, affirmed this disposition upon administrative appeal.  Id. ¶ 3(j).


## B. Fourth Disciplinary Report

On March 28, 2007, Reid filed a grievance against three unidentified Auburn

employees.  Id. ¶ 4.  On April 4, 2007, defendant Quinn, a lieutenant at Auburn, lodged a

disciplinary report charging Reid with stalking and harassment.  Id. ¶ 4(a)–(b).  This report

excerpted parts of Reid's grievance to support the charges.  Id.  Defendant Wolczyk,

Commissioner's Hearing Officer at Auburn, presided over the subsequent disciplinary

hearing and found Reid guilty of harassment but not guilty of stalking.  Id. ¶ 4(c).  Reid was

sentenced to six months in the Special Housing Unit ("SHU"),[5] loss of privileges, and loss of

six months "good time" credits.  Id.  Defendant Graham reduced the sentence to thirty days

---

[4]"Keeplock is a form of disciplinary confinement segregating an inmate from other inmates and depriving him of participation in normal prison activities." Green v. Bauvi, 46 F.3d 189, 192 (2d Cir. 1995); N.Y. Comp. Codes R. & Regs. tit. 7, § 301.6.

[5]SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b) (1995).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

in the SHU and reinstated the good time credits.  Id. ¶ 4(e).  Reid filed a grievance regarding this disciplinary report on April 20, 2007.  Id. ¶ 4(j).  Graham ultimately denied this grievance on May 3, 2007.  Id.

## C. Sixth Disciplinary Report

On January 11, 2008, defendant Leonard, a teacher at Gouverneur, was interviewed by her supervisor, defendant Geddis, in response to a "serious" grievance Reid had filed against her.  Id. ¶ 6.  On January 14, 2008, Leonard conspired with defendants Geddis, Hooper (counselor at Gouverneur), and Pirie (Deputy Superintendent of Program Services at Gouverneur) to deny Reid's request to sign out of educational programs.  Id. ¶ 6(b).  Leonard then submitted a disciplinary report charging Reid with creating a disturbance, harassment, refusing a direct order, and making threats.  Id. ¶¶ 6, 6(e).  Reid was found guilty of all charges at a subsequent administrative hearing.  Id. ¶ 6(f).  Upon appeal, defendant A. Taylor, a captain at Gouverneur, affirmed the disposition.  Id. ¶ 6(g).  On January 22, 2008, Reid submitted two grievances—one alleging retaliation and harassment by the DOCS employees involved in this incident, the other complaining that proper procedures were not followed.  Id. ¶ 6(i).

## D. Seventh Disciplinary Report

Also in January 2008, Reid filed numerous complaints with the DOCS Central Office about the condition of Gouverneur's SHU.  Id. ¶ 7.  Reid refused to be interviewed about these complaints by defendant Leone, a sergeant at Gouverneur, because he feared

"unnecessary" force would be used.  Id.  Thereafter, Leone conspired with defendant A.

Taylor to charge Reid falsely with assault in order to have him transferred out of

Gouverneur.  Id. ¶ 7(a).  On January 31, 2008, Leone authored a disciplinary report against

Reid for refusing to be interviewed.  Id. ¶ 7(b).  Geddis presided over the subsequent

disciplinary hearing and found Reid guilty of disobeying a direct order.  Id. ¶ 7(c).  Reid

appealed this decision to defendant Bezio, DOCS Director of Special Housing and Inmate

Disciplinary Programs, who modified the loss of good time credits.  Id. ¶ 7(f).[6]

## II.  Discussion

Reid alleges that Sarra, Quinn, Wolczyk, Leonard, Leone, and Geddis processed false

disciplinary reports against him in retaliation for written complaints and grievances he

submitted.  Reid further alleges that supervisory defendants Bezio and Graham learned of

the retaliation through complaints and appeals, but did nothing in response.  Reid maintains

that defendants Chindamo, A. Taylor, Pirie, and Hooper conspired with the aforementioned

defendants to retaliate against Reid.  Defendants contend that (1) the supervisory

defendants were not personally involved in any of the allegedly violative conduct, and (2)

the retaliation and conspiracy claims must be dismissed because they are wholly

conclusory.

---

[6] Reid correctly acknowledges that he cannot challenge the duration of his
sentence through 42 U.S.C. § 1983.  Id. ¶ 7(g); see Peralta v. Vasquez, 467 F.3d 98, 104
(2d Cir. 2006) (under the "favorable termination rule," prisoners can only attack sanctions
affecting the term of their imprisonment through a habeas petition).  Therefore, any claim
related to the loss of good time credits is not properly before this court.

## A.  Legal Standard

To survive a 12(b)(6) motion to dismiss, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Although a complaint need only contain "a short and plain statement of the claim showing the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), more than mere conclusions are required.  Indeed, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).

Dismissal is appropriate only where plaintiffs fail to provide some basis for the allegations that support the elements of their claims.  See Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").  When considering a motion to dismiss, the complaint is to be construed liberally, the factual allegations are to be accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor.  Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). Additionally, particular deference should be given to a pro se litigant's complaint.  Erickson v. Pardus, 551 U.S. 89, 94 (2007).

## B. False Disciplinary Reports/Retaliation

Reid alleges that the third, fourth, sixth, and seventh disciplinary reports were falsified and lodged against him in retaliation for the written complaints and grievances he filed.  An inmate "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." Freeman v.

Rideout, 808 F.2d 949, 951 (2d Cir. 1986).  To constitute an actionable claim, "[t]here must

be more, such as retaliation against the prisoner for exercising a constitutional right" or the

denial of procedural protections.  Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997).

Claims of retaliation are rooted in the First Amendment.  See Gill v. Pidlypchak, 389

F.3d 379, 380 (2d Cir. 2004).  To state an actionable claim for retaliation, a plaintiff must

first show that the conduct at issue was constitutionally protected and, second, that the

conduct was a "substantial or motivating factor for the adverse actions taken by prison

officials."  Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003).  If the plaintiff establishes

these elements, the burden shifts to the defendants who can still defeat the claim by

showing, by a preponderance of the evidence, that they would have taken the same action

against the plaintiff absent his exercising of the protected conduct.  Graham v. Henderson,

89 F.3d 75, 79 (2d Cir. 1996).

Courts must view retaliation claims with care and skepticism due to the ease with which

they can be fabricated and to avoid judicial intrusion into matters of prison administration.

Jackson v. Onondaga County, 549 F. Supp. 2d 204, 214–15 (N.D.N.Y. 2008) (McAvoy, J. &

Lowe, M.J.).  Conclusory allegations alone are insufficient.  Id. at 214 (citing Flaherty v.

Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)).  For purposes of the first element of the claim, it

is undisputed that the filing of grievances is constitutionally protected conduct.  See Gill,

389 F.3d at 384; Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002).  Further, "there is little

doubt that a misbehavior report would constitute an 'adverse action.'" Anderson v. Leghorn,

No. 9:07-CV-1184, 2011 WL 691658, at *4 (N.D.N.Y. Jan. 24, 2011) (Treece, M.J.).

**1. Third Disciplinary Report**

Reid alleges that the January 18, 2007, disciplinary report written by Sarra was in retaliation for the January 16, 2007 letter he sent to her complaining that a teacher was distracting him by "popping" her chewing gum loudly.  While this letter was not a formal grievance, it serves the same purpose of seeking redress through petition.  See Franco v. Kelly, 854 F.2d 584, 589 (2d Cir. 1988) (prisoners must be afforded "free and uninhibited access to both *administrative and judicial* forums for the purpose of seeking redress of grievances") (internal quotation marks omitted); Bowens v. Pollock, No. 06-CV-457A, 2010 WL 5589350, at *11 (W.D.N.Y. Oct. 12, 2010) (inmate's letter complaining of the prison movie selection was an exercise of his constitutionally protected right to seek redress).  Therefore, the first prong of this retaliation claim is satisfied.

The issue then becomes whether Reid's letter was a substantial or motivating factor for the third disciplinary report.  It has been held that "the temporal proximity of an allegedly retaliatory misbehavior report . . . may serve as circumstantial evidence of retaliation."  Gayle, 313 F.3d at 683.   Here, Sarra received Reid's complaint on January 16, confronted him about his complaints on January 17, and lodged the misbehavior report on January 18.  Compl. ¶¶ 3–3(d).  Lending further support to Reid's claim that the disciplinary report was retaliatory is Sarra's admonition, made during the January 17 confrontation, that "I received two written complaints from you, I don't want anymore."  Id. ¶ 3(c).  Reid has thus pleaded a plausible claim that the third disciplinary report was issued in retaliation for his constitutionally protected petition for redress.  As such, it is recommended that defendants' motion to dismiss this claim be denied.

9

**2. Fourth Disciplinary Report**

Reid alleges that the April 4, 2007 disciplinary report, in which Quinn charged him with stalking and harassment, was in direct response to the grievance he filed on March 28, 2007, complaining about three Auburn employees.  As filing a grievance is constitutionally protected conduct, the issue again becomes whether it was a substantial or motivating factor for the fourth disciplinary report.  This disciplinary report was filed only one week after Reid's grievance and excerpted direct quotes from the grievance to support the charges. Id. ¶ 4(a).  These factual allegations provide both circumstantial and direct evidence that the fourth misbehavior report was in retaliation for Reid's grievance.  See Gayle, 313 F.3d at 683 (finding additional support for plaintiff's retaliation claim where the disciplinary report arose from statements plaintiff made to defendant while discussing the grievance he had filed six days earlier).  Additionally, hearing officer Wolczyk's administrative determination finding Reid guilty of the charges was ultimately reversed on appeal.  Compl. ¶ 4(g); see Gayle, 313 F.3d at 683 (plaintiff's retaliation claim bolstered by the fact that the administrative determination of his guilt was later reversed).

Therefore,  it is recommended that defendants' motion to dismiss this claim be denied.


**3. Sixth Disciplinary Report**

Reid claims that Leonard lodged a disciplinary report against him on January 14, 2008 in retaliation for a "serious" grievance he had filed against her.  However, the causal link between this grievance and the sixth disciplinary report is not clear.  In his complaint, Reid notes that on the day the disciplinary report was filed, "he began sputtering in class from

10

pain, which Leonard misinterpreted as hostility." Compl. ¶ 6(c). This suggests that there

was an independent motive for the disciplinary report, which charged Reid with creating a

disturbance, harassment, refusing a direct order, and threats. Id. ¶ 6(e).

Moreover, even though the disciplinary report was submitted only three days after

Leonard's supervisor interviewed her about the claims in the grievance, this minimal

circumstantial evidence of temporal proximity, standing alone, is insufficient to support a

retaliation claim. See Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (where

circumstantial evidence is the sum total of plaintiff's proof, "we might be inclined to affirm

the grant of summary judgment based on the weakness of [plaintiff's] case"). There are

therefore insufficient factual allegations to establish a causal link between the grievance

and the sixth disciplinary report. Accordingly, it is recommended that defendants' motion to

dismiss this claim be granted.

### 4. Seventh Disciplinary Report

Reid maintains that the January 31, 2008 disciplinary report was filed against him by

Leone in retaliation for numerous written complaints he had made to DOCS Central Office

regarding the condition of the SHU at Gouverneur. As noted above, such written

complaints implicate Reid's constitutionally protected right to petition for redress.

Therefore, it must be determined whether these written complaints were a substantial or

motivating factor for the seventh disciplinary report.

Reid's complaint belies his assertion that the disciplinary report was motivated by his

written complaints to the Central Office. These written complaints apparently prompted an

internal investigation. However, when Leone attempted to interview Reid about the

11

allegations, Reid admittedly refused to cooperate.  Compl. ¶ 7.  Leone then authored the

disciplinary report, charging Reid with disobeying a direct order for refusing to be

interviewed—not for submitting the written complaints.  Id. ¶ 7(b).  There was thus nothing

false about this disciplinary report.  Further, it is likely that Leone would have taken the

same action if the interview Reid refused to cooperate with was not prompted by his

exercising a constitutionally protected right.

These facts do not support a claim that Leone filed the disciplinary report to dissuade

Reid from seeking redress.  On the contrary, Leone was attempting to provide the very

redress Reid sought in his written complaints.  As Reid fails to allege a causal connection

between constitutionally protected conduct and the seventh disciplinary report, it is

recommended that defendants' motion to dismiss this claim be granted.


### C. Conspiracy[7]

Reid claims that Chindamo "conspired along with Sarra" to process the third disciplinary

report.  Id. ¶ 3(g).  To support a § 1983 conspiracy claim, a plaintiff must establish:  "(1) an

agreement between two or more state actors or between a state actor and a private entity;

(2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in

furtherance of that goal causing damages."  Pangburn v. Culbertson, 200 F.3d 65, 72 (2d

Cir. 1999).  Moreover, "'complaints containing only conclusory, vague, or general

_____

[7] As it is recommended that the retaliation claims related to the sixth and seventh disciplinary reports be dismissed, any conspiracy claims associated with those disciplinary reports should also be dismissed.  See Curley v. Vill. of Suffern, 268 F.3d 65, 72 (2d Cir. 2001) (where plaintiff cannot establish a constitutional violation, "he may not maintain a § 1983 cause of action for conspiracy").  The only remaining conspiracy claim is that involving defendant Chindamo.

allegations [of conspiracy] . . . are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.'" <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 325 (2d Cir. 2002) (quoting <u>Dwares v. City of New York</u>, 985 F.2d 94, 100 (2d Cir. 1993)).

Reid's conspiracy claim is wholly conclusory.  The only factual allegation of Chindamo's involvement is that he accompanied Sarra to the disciplinary hearing at which Reid was found guilty of the charges contained in the third disciplinary report.  Compl. ¶ 3(g).  There are no allegations that Chindamo testified at the hearing or even spoke with Sarra, Reid, or the hearing officer.  Chindamo's mere presence at the hearing is insufficient to establish his role in a conspiracy to deprive Reid of his constitutional rights.  Accordingly, it is recommended that defendants' motion to dismiss this claim be granted.


### D. Personal Involvement

Defendants argue that the "supervisory defendants" lacked personal involvement.  The only remaining supervisor in this case is Graham.  Reid claims that Graham was personally involved in the retaliatory third and fourth disciplinary reports.  On January 26, 2007, Graham affirmed the administrative determination finding Reid guilty of the charges contained in the third disciplinary report.  <u>Id.</u> ¶ 3(j).  On April 24, 2007, Graham granted Reid's request for discretionary review and modified the penalties imposed as a result of the fourth disciplinary report by reducing his time in SHU and reinstating his good time credits. <u>Id.</u> ¶ 4(e).  On May 3, 2007, Graham denied Reid's grievance related to the fourth disciplinary report.  <u>Id.</u> ¶ 4(j).

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983.'" <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (quoting <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, supervisory officials may not be held liable merely due to their position of authority.  <u>Id.</u> Indeed, "mere linkage in the prison chain of command" is insufficient to implicate prison administrators.  <u>Richardson v. Goord</u>, 347 F.3d 431, 435 (2d Cir. 2003) (internal quotation marks omitted).

Historically, a supervisor could only be held liable under § 1983 by one or more of the following:  (1) direct participation in the constitutional deprivation; (2) failure to remedy a wrong after learning about it through a report or appeal; (3) creation of a policy that sanctioned the violative conduct or allowed such conduct to continue; (4) grossly negligent supervision of personnel who committed the violation; or (5) failure to act after receiving information indicating that constitutional violations were occurring.  <u>Colon</u>, 58 F.3d at 873. However, it is unclear whether all five <u>Colon</u> bases for supervisor liability remain available in light of the Supreme Court's decision in <u>Iqbal</u>, which rejected the notion that a supervisor can be held liable based on "mere knowledge of his subordinate's discriminatory purpose" and instead required a showing of discriminatory purpose by the supervisor himself.  129 S. Ct. at 1948–49.

<u>Iqbal</u>'s effect has been debated in the district courts.  <u>See, e.g.</u>, <u>McCarroll v. Fed. Bureau of Prisons</u>, No. 9:08-CV-1343, 2010 WL 4609379, at *4 (N.D.N.Y. Sept. 30, 2010) (Lowe, M.J.) ("Several district courts in the Second Circuit have determined that *Iqbal* nullified some of the *Colon* categories."); <u>Kleehammer v. Monroe County</u>, No. 09-CV-6177, 2010 WL 4053943, at *8 (W.D.N.Y. Sept. 8, 2010) (implying that only the first and third <u>Colon</u> categories survived <u>Iqbal</u>'s requirement of "active conduct" to impose supervisor

14

liability); D'Olimpio v. Crisafi, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) (citing, but

disagreeing with, several recent decisions that interpreted Iqbal as eliminating all but the

first and third Colon categories).

Here, Reid does not allege that Graham directly participated in the retaliation or was

grossly negligent in his supervision.  Reid instead relies on the second and fifth Colon

categories.  Even assuming these categories survived Iqbal, a close review of Reid's

complaint fails to reveal any allegation that his correspondence put Graham on notice of

ongoing retaliation.  Reid claims that his appeal raised four grounds on which to reverse the

administrative determination related to the third disciplinary report.  Compl. ¶ 3(i).  However,

he does not specify what these grounds actually were.  Similarly, Reid does not describe of

what he specifically complained in the grievance Graham denied on May 3, 2007.

Without further facts, it cannot simply be assumed that the appeal and grievance made

Graham aware of ongoing constitutional violations.  Therefore, the factual allegations do not

plausibly establish Graham's personal involvement.  See Shomo v. City of New York, 579

F.3d 176, 184 (2d Cir. 2009) (receiving and responding to grievances and letters of

complaint is insufficient to establish personal involvement unless such put the supervisor on

notice of a constitutional violation that he or she then failed to remedy); Harnett v. Barr, 538

F. Supp. 2d 511, 524 (N.D.N.Y. 2008) (Hurd, J.) ("If the official is confronted with a violation

that has already occurred and is not ongoing, then the official will not be found personally

responsible for failing to 'remedy' a violation.").

Accordingly, it is recommended that any claims against Graham be dismissed without

prejudice.  See Shomo, 579 F.3d at 184 (affirming the dismissal of supervisory defendants

where the complaint failed to allege how the grievances notified them of ongoing violations but granting plaintiff leave to replead because it was possible to remedy the inadequacies).

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion to dismiss (Dkt. No. 49) be:

1. **GRANTED** with prejudice as to the second, fifth, sixth, and seventh disciplinary reports, the conspiracy claim, the conditions-of-confinement claims, and as to all defendants except Graham, Sarra, Quinn, and Wolczyk as to which claims and defendants this action should be terminated;

2. **GRANTED** without prejudice as to defendant Graham as to which this action should be **TERMINATED**; and

3. **DENIED** as to the third and fourth disciplinary reports and as to defendants Sarra, Quinn, and Wolczyk.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation."  N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. § 636(b)(1)(B)–(C)).  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d

85, 89 (2d Cir. 1993); <u>Small v. Sec'y of HHS</u>, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  March 30, 2011
        Albany, New York

David R. Homer
U.S. Magistrate Judge

17